# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WEBSTER, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 02-603 (RC) |
| | : | | |
| v. | : | Re Document No.: | 234 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This Freedom of Information Act (FOIA) and Privacy Act case was originally filed by Plaintiff Carl Oglesby in March 2002.  He sought records from the Federal Bureau of Investigation (FBI) and the Central Intelligence Agency (CIA).  During the course of the litigation, Mr. Oglesby passed away, and the present plaintiffs—Ms. Barbara Webster and Ms. Aron DiBacco, the administrator of his estate and his daughter, respectively—were substituted in his stead.  Defendant, the U.S. Department of Justice (DOJ), now moves for summary judgment on behalf of the FBI,[1] arguing that the agency has fulfilled its statutory obligations.  For the reasons explained below, the Court agrees and will bring this long-running litigation to a close.

## II.  PROCEDURAL HISTORY

Mr. Oglesby filed this action in 2002, seeking access to "records pertaining to himself" from the FBI and CIA.  Compl. ¶¶ 5, 19, ECF No. 1.  Since then, the parties have engaged in multiple rounds of negotiations, record searches, document productions, and briefing.  Not of all

---

[1] The claims against the CIA were dismissed in 2007.  *See* Mem. Op. and Order (Feb. 26, 2007), ECF No. 66.

of this extensive procedural history is relevant here. The Court will focus on the more recent developments that underlie DOJ's pending motion, which is based on two different groups of documents (each represented by its own *Vaughn* index).

The first *Vaughn* index has its roots in 2017. At that time, after some disagreements about the scope of Mr. Oglesby's requests, the Court ordered that the parties file new summary judgment motions based on 16,803 pages that the Court had newly deemed responsive. *See* Order (Aug. 10, 2017) at 4, ECF No. 219.[2] Shortly thereafter, the Court adopted a joint suggestion of the parties[3]: from the 16,803 pages, Plaintiffs would select a representative sample of up to 350 pages that Defendant had released in part (plus an additional sample of 10 documents that Defendant had withheld in their entirety), which would be compiled into a new *Vaughn* index. *See* Order (Sept. 11, 2017) at 2, ECF No. 221. In response to Plaintiffs' selections, the FBI was able to locate 225 total pages that were within the scope of the 16,803 pages identified by the Court. Def.'s Mot. Summ. J. Ex. A ("Hardy Decl.") ¶ 5, ECF No. 234-1.[4] In February 2018, the FBI provided Plaintiffs with a copy of the corresponding *Vaughn* index and a copy of the processed documents. *Id.* (citing Ex. A1 ("*Vaughn* Index of Plaintiff's 2017 Sample"), ECF No. 134-2).

The second *Vaughn* index has its origins in 2011, when (for reasons not relevant here) the Court ordered DOJ to reprocess Plaintiffs' original FOIA requests. *See* Order (Aug. 8, 2011),

---

[2] Because not all documents are separately paginated, the Court will refer to the ECF page numbers throughout this opinion.

[3] *See* Joint Motion to Enter Proposed Schedule (Sept. 11, 2017) at 2, ECF No. 220.

[4] Plaintiffs submitted these selections in two separate requests: the first on November 20, 2017, and the second on December 7, 2017. Hardy Decl. ¶ 5. Over the two requests, Plaintiffs selected a total of 740 pages. *Id.* According to DOJ, however, the majority of the selected pages were either not identifiable or were not within the scope of the 16,803 pages identified by the Court. *Id.* Plaintiffs have not challenged these representations or otherwise objected to the composition of the *Vaughn* index.

ECF No. 127.  After DOJ completed the reprocessing in 2011 and 2012, the Court adopted a similar joint proposal from the parties[5]: from the reprocessed documents, Plaintiffs would select a representative sample of 200 documents that were released in part (plus an additional sample of 10 documents that were withheld completely), which would likewise be compiled into a new *Vaughn* index.  *See* Order (May 22, 2018), ECF No. 230.  Based on Plaintiffs' selections, the FBI ultimately reviewed 116 total pages.  Hardy Decl. ¶ 6.[6]  In September 2018, the FBI again provided Plaintiffs with a copy of this second *Vaughn* index and the processed documents.  *Id.* (citing Ex. A2 ("*Vaughn* Index of Plaintiff's 2018 Sample"), ECF No. 134-2).

On the basis of these two *Vaughn* indices, DOJ filed the currently pending motion for summary judgment, which is now ripe for the Court's consideration.  *See* Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s MSJ"), ECF No. 234-4; Pls.' Resp. Def.'s Mot. Summ. J. ("Pls.' Opp'n"), ECF No. 243; Def.'s Reply to Pls.' Resp. Def.'s Mot. Summ. J. ("Def.'s Reply"), ECF No. 244.

### III.  LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), while a dispute is "genuine" if there is enough evidence for a reasonable finder of fact to decide in favor of the non-movant, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).  In the absence of an opposing party's own contrary

---

[5] *See* Supplemental Joint Status Report (March 9, 2018) at 2, ECF No. 226.

[6] Plaintiffs submitted their selections—140 pages, plus 68 documents of undetermined length—on June 6, 2018.  Hardy Decl. ¶ 6.  According to DOJ, some of the pages were duplicative of pages that were previously selected by Plaintiffs, or did not exist.  *Id.*  As with the first *Vaughn* index, Plaintiffs have not challenged these representations or objected to the composition of the second index.

affidavits, declarations, or evidence, factual assertions in a moving party's affidavits or declarations may be accepted as true. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

"The vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). To carry its burden on such a motion, an "agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents," even when a plaintiff does not challenge the adequacy of an agency's search for responsive records. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal citation and punctuation omitted). The agency must also show that any responsive records that were not provided were properly withheld under one of FOIA's nine express statutory exemptions, *see Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice* (*CREW I*), 746 F.3d 1082, 1088 (D.C. Cir. 2014), or that information inside those records was "inextricably intertwined with" exempt information, *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (citations and internal quotation marks omitted). To justify the invocation of an exemption, an agency can submit affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). Even when the use of a particular exemption is not challenged, though, "the Court still has an independent duty to 'determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Tokar v. U.S. Dep't of Justice*, 304 F. Supp. 3d 81, 94 n.3 (D.D.C. 2018) (quoting *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016)).

Additionally, as mentioned above, the parties here agreed to file dispositive motions based on a subset of documents, compiled in two separate *Vaughn* indices. This kind of "[r]epresentative sampling" is "an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991) (citations omitted). "When presented with a representative sample, a court considers the documents produced or described with the understanding that '[t]hey count not simply for themselves, but for presumably similar non-sample documents.'" *Clemente v. FBI*, 854 F. Supp. 2d 49, 58 (D.D.C. 2012) (quoting *Bonner*, 928 F.2d at 1151). An indication that information was improperly redacted from the sampled documents suggests similar errors infect the non-sampled documents; conversely, if the sampled documents reveal no improper withholdings, the Court can conclude the agency appropriately applied exemptions to the whole universe of documents at issue. *See id.*

## IV. ANALYSIS

To frame the discussion, the Court notes that DOJ's motion for summary judgment is largely uncontested. Plaintiffs' opposition is brief, comprising just twelve double-spaced pages set in large, bolded font. *See general* Pls.' Opp'n. Its main argument appears to attack the adequacy of DOJ's search for responsive records. S*ee id.* at 4 ("A central issue in this case from the outset has been the Government's attempt to pretend that no components of the FBI had records that were responsive to Oglesby/DiBacco's requests."). Otherwise, it does not object to the (1) the use of sampling procedures as the basis for summary judgment (procedures which were, after all, jointly proposed by the parties) or the composition of the two *Vaughn* indices that resulted from that sampling process, (2) any of the specific exemptions invoked by DOJ, or (3)

DOJ's representation that all non-exempt, segregable information within each record was released. *See generally id.*

### A. Adequacy of the Search

The Court first considers the adequacy of the FBI's search. *See Steinberg*, 23 F.3d at 551. As Defendant notes, the FBI has conducted "multiple searches" during the course of the litigation. Def.'s MSJ at 10; *see also* Hardy Decl. ¶ 52 (mentioning various searches, described in affidavits, that were undertaken from 1999 through 2011). However, Defendant sensibly suggests that the Court focus on the search conducted after the 2011 reprocessing order, when the FBI conducted a fresh round of searches for documents responsive to Plaintiffs' request. Def.'s MSJ at 10.

Relying on the Declaration of FBI employee David M. Hardy (Section Chief of the Record/Information Dissemination Section, Information Management Division), Defendant details at length the steps taken to locate responsive documents at that time. *See* Def.'s MSJ at 8–16. Given Mr. Oglesby's request for "records pertaining to himself," the FBI searched its Central Records System ("CRS"), where the agency "indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval." *Id.* at 10 (citing Hardy Decl. ¶ 56). As search terms, the FBI used thirty-five variations of Mr. Oglesby's name. *Id.* at 12. According to Mr. Hardy, "[b]ecause CRS is indexed by individual names, organizations and events, the FBI's search terms were designed to locate any records responsive to plaintiffs' request and would in fact have located any responsive records." *Id.* at 12. Additionally, the FBI more recently conducted additional searches for documents that it could not locate during the 2011 reprocessing. *Id.* at 14.

6

In challenging the FBI's efforts, Plaintiffs appear to suggest that other responsive documents might exist, possibly within the control of other agencies or DOJ components:

> The FBI itself referred numerous documents to other components of the DOJ and to other government agencies without getting a complete accounting of the releasability [sic] of the documents or information withheld. New evidence has emerged which raises extremely important issues about whether the DOJ has developed procedures and practices which enable it to deny the existence or relevance of potentially responsive records, both with respect to the FBI, the DOJ and the Bureau of Prisons.

Pl.'s Opp'n at 5. Plaintiffs proceed to discuss developments in a separate case, *Clemente v. FBI*, No. 13-cv-108 (D.D.C.), which appears to concern certain Bureau of Prison (BOP) policies. To the extent that Plaintiffs are suggesting that the FBI erred by failing to properly coordinate with another agency or search another agency's records, they are mistaken. FOIA requests are properly directed to a particular agency or component. *See Gordon v. Courter*, 118 F. Supp. 3d 276, 285 (D.D.C. 2015) (noting that, "[p]er FOIA regulations, requests must be sent 'directly to the FOIA office of the component that maintains the records being sought,'" quoting 28 C.F.R. § 16.3(a)(1)). And the recipient of a request is only responsible for searching records under its control. *See Antonelli v. U.S. Parole Com'n*, 619 F. Supp. 2d 1, 4 (D.D.C. 2009) (rejecting challenge to agency's search based on claim that additional records existed in files of other DOJ components, because "an agency component is obligated to produce only those records in its custody and control at the time of the FOIA request").

In sum, the Court agrees with Defendant that the steps outlined in the Hardy Declaration represent "a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

## B. Exemptions

Next, the Court reviews Defendant's invocation of various FOIA exemptions. As Mr. Hardy explains, the FBI processed the responsive records under FOIA[7] and determined that some or all of various documents should be withheld. *See* Hardy Decl. ¶ 69. In some cases, the FBI records contained information that originated from other agencies; in these situations, consistent with DOJ policy, the FBI referred the record to the appropriate agency for a disclosure determination. *Id.* ¶¶ 72–73. Mindful that the scope of its inquiry is limited, the Court analyzes each agency's exemption claim below. *See Larson*, 565 F.3d at 865 ("If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.").

### 1. Exemption 1

FOIA's Exemption 1 protects matters which are (1) "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and (2) "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The applicable classification order, Executive Order ("E.O.") No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), sets forth "both substantive and procedural criteria for classification." *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013). Among other things, the information must fall within certain subject-matter classification categories, and the unauthorized disclosure of the information must reasonably be expected to cause some damage to national security. *Id.*

---

[7] The FBI determined that the Privacy Act did not apply and thus "processed the records under the FOIA to achieve maximum disclosure." Def.'s MSJ at 17 (citing Hardy Decl. ¶ 67).

*a. FBI*

Defendant cites Mr. Hardy's declaration to explain how certain material withheld by the FBI meets the requirements of E.O. 13,526 and, by extension, Exemption 1. *See* Def.'s MSJ at 18–21. As a classifying authority, Mr. Hardy determined that the substantive information withheld was properly classified, as disclosure could reveal intelligence sources or methods and lead to diplomatic or economic retaliation against the United States. Def.'s MSJ at 19–20 (citing Hardy Decl. ¶¶ 82, 84). He also confirms that the procedural requirements of E.O. 13,256 were observed—for example, that each document was marked and stamped with the appropriate classification designation. *See* Hardy Decl. ¶ 80.

*b. CIA*

Defendant also explains that the FBI referred some records to the CIA, which also determined—according to the declaration of Ms. Antoinette Shiner—that some information should be withheld pursuant to Exemption 1. *See* Def.'s MSJ at 23 (citing Ex. JJ ("Shiner Decl."), ECF No. 234-2). Like Mr. Hardy's declaration, Ms. Shiner's explains how the withheld information meets the substantive and procedural requirements of E.O. 13,526 and, thus, Exemption 1. Specifically, Ms. Shiner avers that the information withheld was properly classified because it concerned intelligence activities and its disclosure could reasonably be expected to result in damage to national security. Shiner Decl. ¶¶ 6–7. According to Ms. Shiner, some of the withheld pages contain detailed information about human sources, while the disclosure of other material could reasonably be expected to reveal an intelligence method that is still in active use by the CIA. *Id.* at ¶ 10.

Particularly given that courts have "consistently deferred to executive affidavits predicting harm to the national security," *Larson*, 565 F.3d at 865, the Court concludes that the

Hardy and Shiner declarations describe, with reasonable detail, how the information withheld by the FBI and CIA logically falls under Exemption 1.

### 2. Exemption 3

Exemption 3 is essentially an incorporation provision: it allows the withholding of records that are "specifically exempted from disclosure by [a different] statute . . . provided that such statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).[8]

#### a. FBI and CIA

As Defendant explains, the FBI withheld certain information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended, 50 U.S.C. § 3024(i)(1). *See* Def.'s MSJ at 24. The NSA requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." *Id.* "As interpreted by the D.C. Circuit, this language exempts from disclosure under FOIA material that the agency 'demonstrates . . . can reasonably be expected to lead to unauthorized disclosure" of intelligence methods or sources." *Nat'l Sec. Counselors v. CIA*, 320 F. Supp. 3d 200, 215 (D.D.C. 2018) (quoting *Wolf v. CIA.*, 473 F.3d 370, 377 (D.C. Cir. 2007)).

Mr. Hardy avers that certain information qualified for withholding under the NSA, and thus under Exemption 3, based on his determination that "the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiffs." Hardy Decl. ¶ 88.

---

[8] The OPEN FOIA Act of 2009 established an additional requirement: any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009, [must] specifically cite[] to this paragraph" in order to qualify under Exemption 3. 5 U.S.C. § 552(b)(3)(B).

Similarly, as Defendant explains, the CIA also invoked the NSA to withhold certain information under Exemption 3. Ms. Shiner explains that certain information (which was also protected by Exemption 1, as discussed above) would reveal "specific sources and methods of intelligence collection" and "how the CIA controls dissemination of classified information." Shiner ¶ 16.

While the Hardy and Shiner declarations lack extensive detail, the Court finds that they do adequately assert that the information withheld qualifies under Exemption 3. Courts have found similar averments sufficient. *See, e.g.*, *Am. Ass'n of Women, Inc. v. U.S. Dep't of Justice*, 167 F. Supp. 3d 136, 143 (D.D.C. 2016) (approving the withholding, under Exemption 3, of "information relating to intelligence sources and methods" without further describing the records).

### b. IRS

The Internal Revenue Service (IRS) also requested that the FBI withhold a document under Exemption 3 and 6103 of the Internal Revenue Code (IRC), 26 U.S.C. § 6103(a). *See* Def.'s MSJ at 26. According to Mr. Hardy's declaration, the IRS advised that the document at issue was Mr. Oglesby's return information, which the Tax Code treats as confidential. Hardy Decl. ¶ 132; *see also* 26 U.S.C. § 6103(a) ("Returns and return information shall be confidential" and not disclosed "except as authorized by this title"). The Court finds that the FBI and IRS have reasonably demonstrated that the withheld information logically falls within Exemption 3. *See Judicial Watch, Inc. v. SSA*, 701 F.3d 379, 380 (D.C. Cir. 2012) (finding

records that would disclose "return information" as "protected from disclosure by the Tax Code" and "in turn exempt under FOIA").[9]

### 3. Exemption 7

Exemption 7 protects six different categories of law enforcement information from disclosure. *See* 5 U.S.C. § 552(b)(7). To qualify under any of the categories, the information at issue must first meet a threshold requirement: that it was "compiled for law enforcement purposes." *Id.*

Here, before describing the applicability of specific sub-categories under Exemption 7, Defendant first argues that all of the information met the threshold requirement. As Mr. Hardy explains, the "[t]he investigative files at issue were compiled during the FBI's criminal investigation of the subject's and other third parties' crimes involving the internal security of the United States; domestic terrorism threats; and foreign counterintelligence." Hardy Decl. ¶ 91 (citations omitted). Based on that representation, the Court agrees that records at issue meet this threshold standard. *See Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) ("To show that the disputed documents were 'compiled for law enforcement purposes,' the FBI need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law'") (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998))).

---

[9] Defendant has indicated that the IRS would disclose the document at issue if Plaintiffs provided the relevant disclosure authorization, but Plaintiffs have apparently not responded to this offer. *See* Def.'s' MSJ at 27 n.21 ("[D]efendant has no issue disclosing this document to plaintiffs provided that th[e] simple documentation (Tax Information Authorization Forms) are [sic] provided. Counsel reached out to opposing counsel for this information on October 29, 2018, but the requested information has not been provided.") (citing Hardy Decl. ¶¶ 133–35).

## a. Exemption 7(C)[10]

Exemption 7(C) exempts records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In reviewing a claim under Exemption 7(C), a court has to determine if there is a substantial privacy interest in the information. *See Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 6–7 (D.C. Cir. 2011). If there is such an interest, a court must balance it against the public interest, "focus[ing] on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation omitted)).

As Mr. Hardy details, the FBI withheld the names and/or identifying data of (1) "third parties who were interviewed and/or provided information to the FBI during the course of its investigation of the subject and other third parties," Hardy Decl. ¶ 95, (2) "state and local law enforcement personnel" who were "aid[ing] the FBI" in the relevant investigative activities, *id.* ¶ 96, (3) "third parties who were merely mentioned in the criminal investigative files responsive to Plaintiffs' request," *id.* ¶ 97, (4) "third parties who were of investigative interest to the FBI," *id.* ¶ 98, and (5) "FBI Special Agents ('SAs')" and "FBI support employees" who were involved with or handled tasks related to the investigations, *id.* ¶¶ 99–100. Courts have found these categories of information as worthy of protection under Exemption 7(C). Namely, as to

---

[10] Coextensively with Exemption 7(C), the FBI also invoked Exempt 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In cases like this one, "[w]hen information is claimed to be exempt from disclosure under both provisions, courts 'focus on . . . Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'" *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice* (*CREW II*), 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *CREW I*, 746 F.3d at 1091 n.2).

categories (1), (3), and (4), our Circuit has recognized that "private citizens—such as witnesses, informants, and suspects—have particularly strong privacy interests" in their "private personal information." *Hodge v. FBI*, 703 F.3d 575, 580–81 (D.C. Cir. 2013); *see also Dillon v. U.S. Dep't Justice*, 102 F. Supp. 3d 272, 295 (D.D.C. 2015) (finding FBI properly withheld names and identifying information of third parties "merely mentioned" in responsive records). Similarly, as to categories (2) and (5), courts have found that federal and state law enforcement personnel involved in investigations have cognizable interests in their names and personal information. *See Dent v. Executive Office for U.S. Attorneys*, 926 F. Supp. 2d 257, 269 (D.D.C. 2013) (names and identifying information of FBI Special Agents and support personnel); *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 95 (D.D.C. 2009) (names and ranks of local law enforcement personnel).

Mr. Hardy also explains why these recognized privacy interests outweigh any interest in disclosure. *See* Def.'s MSJ at 35 ("In all five categories, the FBI identified valid privacy interests in non-disclosure and correctly determined that disclosure of this information would not shed light on the operations and activities of the FBI.") (citing Hardy Decl. ¶¶ 92–100). And in this round of summary judgment briefing, Plaintiffs have not articulated any public interest that would be furthered by such disclosures. In earlier briefing, however, Mr. Oglesby did identify some plausible interests. *See* Pl.'s Second Renewed Cross-Mot. Summ. J. at 23-30 ("Pl.'s Second MSJ"), ECF No. 107. For example, the disclosure of FBI agents' names, he argued, "show[s] which government official is doing what. This is a basic form of accountability." *Id.* at 26. In a similar vein, he suggested that the release of the names of those third-parties who were interviewed, mentioned in files, or of investigative interest is justified, because it would shed light on how the government conducted its investigations. *See id.* at 27 ("Whether the

interviewee is a member of one political or social organization or another, whether the interviewee is connected to the investigation or persons involved in it by political or familial or business relationships, these are matters of public interest because they show how the government is doing its investigation and who is involved in it."); *id.* at 28 ("Th[e] claim that disclosure of the identities of who was of investigative interest would not enlighten the public as to how the FBI conducts its work is simply preposterous."). For its part, Defendant also previously responded to these arguments. *See* Def.'s Mem. Supp. Opp'n to Pl.'s Second Renewed Cross-Mot. Summ. J. ("Def.'s Second Opp'n") at 31 ("[P]laintiff fails to indicate how the public interest will be furthered by the release of these names and identifying information.").

Based on the arguments raised in the previous round of briefing and its own assessment, the Court finds that the privacy interests identified by the government outweigh any plausible public interest in the specific information withheld under Exemption 7(C). Mr. Oglesby is correct, of course, that revealing the names of interviewees, investigation targets, and FBI personnel would shed some marginal light on how the FBI conducted its operations. But that is true of any request to disclose these kinds of information, and courts have repeatedly recognized that such exemptions can be justified. In the absence of more particular reasons why the disclosure of names and identifying information would shed light on the government's (mis)conduct, the Court is unable to conclude that disclosure is warranted. *Cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) ("The unredacted portions of the documents that have already been released . . . inform the reader about the State Department's performance of its duty. . . . The addition of the redacted identifying information would not shed any additional light on the Government's conduct of its obligation.")

*b. Exemption 7(D)*

Exemption 7(D) generally exempts records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). As its text suggests, the exemption is meant to "to assist federal law enforcement agencies" in their efforts "to obtain, and to maintain, confidential sources, as well as to guard the flow of information to these agencies." *Parker v. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991). Courts have been particularly aware of the risks of disclosure in this context. *See Billington v. U.S. Dep't of Justice*, 301 F. Supp. 2d 15, 22 (D.D.C. 2004) ("Exemption 7(D) has long been recognized as affording the most comprehensive protection of all FOIA's law enforcement exemptions.") (citing *Voinche v. FBI*, 940 F. Supp. 323, 331 (D.D.C. 1996)).

As Mr. Hardy details in his declaration, the FBI invoked Exemption 7(D) to withhold the (1) names and identifying information of third parties who received express assurances of confidentiality, as well as the information these third parties disclosed, Hardy Decl. ¶¶ 104–106, (2) confidential "source symbol numbers," which are permanently assigned to confidential sources as identifiers, *id.* ¶¶ 107–109, (3) similarly confidential "source file numbers," *id.* ¶¶ 110–112, and finally (4) information that was provided to the FBI by a local law enforcement agency under an express assurance of confidentiality, *id.* ¶ 113. Non-disclosure of all this is justified, according to Mr. Hardy, because releasing it would have a "chilling effect on the activities and cooperation of other sources" and "greatly impair one of the FBI's most important means of collecting information." *Id.* ¶ 103.

The Court finds that Defendant has reasonably demonstrated how all these kinds of information logically falls within Exemption 7(D). First, the names and identifying information

16

of third parties who received express assurances of confidentiality, as well as the information these third parties disclosed, falls well with the ambit of the exception. *See Schoenman v. FBI*, 763 F. Supp. 2d 173, 200 (D.D.C. 2011) (upholding invocation of Exemption 7(D) where FBI "explain[ed], in a reasonably detailed and non-conclusory manner, that the information at issue in each instance was received in connection with an express grant of confidentiality"); *Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 212 (D.D.C. 2010) (upholding use of Exemption 7(D) to withhold "information provided by or that would identify confidential sources" when agencies' "declarants establish that their agencies' respective cooperating witnesses and informants provided information under an express assurance of confidentiality."). Similarly, the symbol numbers and file numbers associated with particular confidential sources has been repeatedly recognized as falling under Exemption 7(D). *See Skinner*, 744 F. Supp. 2d at 212 (also approving the withholding of "the numbers assigned to" confidential sources); *Putnam v. U.S. Dep't of Justice*, 873 F. Supp. 705, 716 (D.D.C. 1995) (same as to permanent symbol numbers assigned to confidential sources and file numbers that could be used to identify the sources). And lastly, courts have recognized that information provided confidentially by local law enforcement agencies can be lawfully withheld. *See* 5 U.S.C. § 552(b)(7)(D) (noting that confidential sources include "a State, local, or foreign agency or authority . . . which furnished information on a confidential basis"); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1492 (D.C. Cir. 1984) (finding that "confidential information supplied by foreign and local law enforcement agencies is clearly within the purview of Exemption 7(D)").

*c. Exemption 7(E)*

Exemption 7(E) exempts records or information compiled for law enforcement purposes when disclosure would reveal "techniques and procedures for law enforcement investigations or

prosecutions" or "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Circuit precedent "sets a relatively low bar for the agency to justify withholding" information under Exemption 7(E). *Blackwell*, 646 F.3d at 42.

Here, Mr. Hardy explains that the FBI asserted the exemption to "protect the application of certain sensitive investigative techniques within the responsive records." Hardy Decl. ¶ 116. Specifically, this included "information pertaining to the types and dates of investigations referenced in the records at issue," *id.* ¶ 117, as well as information concerning "coordination with [other government agencies] pertaining to the records at issue," *id.* ¶ 118. Disclosure of this information would, according to Mr. Hardy, allow criminals to "predict FBI investigative reactions, adjust their behavior accordingly, and avoid detection and/or disruption by FBI investigative activities," *id.* ¶ 117, and "to structure their behavior to avoid investigative scrutiny by additional government agencies," *id.* ¶ 118. As with the other exemptions, the Court finds that the Defendant's representations sufficiently demonstrate that the withheld information logically falls within Exemption 7(E). *See Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (approving the withholding of "dates or types of investigations" in order "to prevent the disclosure of FBI techniques and procedures and to prevent the dissemination of information that might be gleaned from those techniques and procedures"); *Council on Am.-Islamic Relations, California v. FBI*, 749 F. Supp. 2d 1104, 1116 (S.D. Cal. 2010) (finding that "the FBI properly withheld the information relating to the dates and types of investigations" given that "disclosure of this information would inform the targets of what types of activities trigger the initiation of what type of an investigation"); *Morley v.* CIA, 508 F.3d 1108, 1128

(D.C. Cir. 2007) (withholding information that could provide insight into techniques and procedures used by law enforcement agencies in coordination with the CIA).

### C. Segregability

Finally, the Court has a duty to consider whether the agency has produced all segregable, nonexempt information. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregrability issue *sua sponte*" (quoting *Morley*, 508 F.3d at 1123).

In this case, the two *Vaughn* indices describe each document that was withheld in part or in full and describe the specific kind of exemptions asserted as to each (and when appropriate, designate a specific subcategory of information within the claimed exemption). *See generally Vaughn* Index of Plaintiff's 2017 Sample; *Vaughn* Index of Plaintiff's 2018 Sample. In his declaration, Mr. Hardy also separately avers that "[e]very effort was made to provide Plaintiffs . . . with all reasonably segregable, non-exempt information in the responsive records," Hardy Decl. ¶ 69. He reports that the agency conducted a page-by-page review and that any further release of information would "trigger[] foreseeable harm" to one or more interests protected by the cited FOIA exemptions, *id.* ¶ 137. Similarly, Ms. Shiner, on behalf of the CIA, avers that the agency conducted "a document-by-document and line-by-line review" of the records referred to it by the FBI and determined no additional information could be released "without jeopardizing classified and statutorily-protected material." Shiner Decl. ¶ 17. Based on these representations, the Court is satisfied that Defendant has met the segregrability requirement. *See Milton v. U.S. Dep't of Justice*, 842 F. Supp. 2d 257, 260 (D.D.C. 2012) ("An affidavit stating that an agency official conducted a review of each document and how she determined that no document contains segregable information fulfills the agency's obligation.").

## V. CONCLUSION

Taken as a whole, the Defendant's *Vaughn* indices and related submissions satisfy the Court that Defendant has fulfilled its obligations under FOIA. For that reason, Defendant's motion for summary judgment is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 31, 2020
RUDOLPH CONTRERAS
United States District Judge