**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BARBARA WEBSTER, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 02-603 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 249, 257, 259 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES;**
**DENYING PLAINTIFFS' REQUESTS TO SUBMIT SUPPLEMENTARY BRIEFING**

## I. INTRODUCTION

Plaintiff Carl Oglesby originally filed this Freedom of Information Act ("FOIA") and Privacy Act case in March 2002. He sought records from the Federal Bureau of Investigation ("FBI") and the Central Intelligence Agency ("CIA"). After the Court decided the merits of the case, Oglesby's successors in the suit moved for an award of attorneys' fees to compensate their counsel, James H. Lesar. Lesar has represented Plaintiffs on a contingent fee basis for the last twenty years. The Department of Justice ("DOJ") disputes Plaintiffs' eligibility and entitlement to fees. The Court determines that Plaintiffs are eligible and entitled to fees but finds the requested fee award unreasonable and therefore adjusts it.

## II. FACTUAL BACKGROUND

Oglesby was an author, lecturer, and political journalist. During the 1960s, he protested the United States' involvement in Vietnam and served as the President of Students for a Democratic Society. Pls.' Mot. for Award of Att'ys' Fees ("Pls.' Mot.") at 11, ECF No. 257. Because of his activities and associations, he had been the subject of governmental interest and surveillance. *Id.*

Oglesby filed this action on March 29, 2002, three years after submitting FOIA requests seeking access to "records pertaining to himself" from the FBI and CIA.  Compl. ¶¶ 5, 19, ECF No. 1.  This Court directed the FBI to produce the requested documentation by June 24, 2002.  Scheduling Order at 1, ECF No. 7.  Since then, the parties have engaged in multiple rounds of negotiations, record searches, document productions, and briefing.  Not all of the extensive procedural history is relevant here, but Plaintiffs submitted several motions for fee waivers, summary judgment, and other relief that the Court either granted in part or denied.  In an October 2012 ruling, the Court granted in part Plaintiffs' motion for partial summary judgment as to the scope of the original FOIA request.  Order ("October 2012 Order"), ECF No. 154.  The order required the DOJ to review and release all nonexempt portions of the 16,705 pages it had previously excluded from the scope of Plaintiff's FOIA request at a rate of at least 500 pages per month.  *Id.* at 2.

After Oglesby passed away in 2011, the present plaintiffs—Barbara Webster and Aron DiBacco, the administrator of Oglesby's estate and his daughter, respectively—were substituted in his stead.  Stip. and Order to Sub. Parties at 1, ECF No. 135.  The merits of the case concluded with the Court's grant of summary judgment in favor of the DOJ on March 31, 2020.  *See* Order Granting Def.'s Mot. for Summ. J., ECF No. 245.

On June 29, 2020, Plaintiffs filed a draft motion requesting payment of attorneys' fees under 5 U.S.C. § 552(a)(4)(E)(i).  *See* Pls.' Mot. for Award of Att'ys' Fees and Costs, Mot. for Extension of Time, and Mot. to Stay Proceedings ("Pls.' Draft Mot."), ECF No. 249.  They later followed that draft with a finalized motion.  *See* Pls.' Mot.  The DOJ opposed the award of attorneys' fees.  *See* Def.'s Opp'n to Pls.' Mot. for Att'y Fees and Costs ("Def.'s Opp'n"), ECF No. 252.  Then, Plaintiffs requested a new briefing schedule because they contend they were

unable to submit briefs that fully addressed the attorneys' fees issues due to health difficulties

their lawyer had suffered in the past year.  *See* Pl. DiBacco's Reply Consenting in Part to Defs.'

Position on Procedures to be Followed in Litigating Mot. for Award of Att'ys' Fees and Costs

Under FOIA, ECF No. 259-1.  After mediation efforts failed, Plaintiffs filed another request for

time to submit additional briefing.  *See* Pls.' Status Report and Mot. for Extension of Briefing

Scheddule [sic], ECF No. 264.

The Court concludes that the parties have had ample time to brief the attorneys' fees

issue and denies Plaintiffs' requests to file supplementary memoranda.[1]  Because Plaintiffs are

both eligible and entitled to an award of fees, the Court grants their motion in part.

## III.  LEGAL STANDARD

FOIA allows a court to award attorneys' fees and other reasonable litigation costs to a

plaintiff who substantially prevails in an action against the government.  5 U.S.C.

§ 552(a)(4)(E)(i).  To recover fees and costs, a FOIA plaintiff must show that they are both

eligible for an award and entitled to it.  *Brayton v. Off. of the U.S. Trade Representative*, 641

F.3d 521, 524 (D.C. Cir. 2011) (citing *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363,

368–69 (D.C. Cir. 2006)).  First, to assess eligibility, the Court determines whether a plaintiff has

"substantially prevailed" in the FOIA proceedings.  *Id*.  "Only eligible plaintiffs are entitled to an

---

[1] Two weeks after the Court granted summary judgment to the DOJ, it approved
Plaintiffs' request for a two-month extension of time to move for attorneys' fees.  Min. Order
(Apr. 15, 2020).  It subsequently approved an additional two-week extension.  Min. Order. (June
15, 2020).  Plaintiffs then submitted their draft motion, Pls.' Draft Mot., and, a month later,
supplemented the draft with an accounting of the fees requested, *see* Notice of Filing, ECF No.
251, which the Court deemed timely, Min. Order (July 30, 2020).  After the DOJ filed an
opposition, the Court granted Plaintiffs two extensions of time to file a reply.  Min. Order (Sept.
10, 2020); Min. Order (Oct. 14, 2020).  Only then did Plaintiffs file a finalized motion.  Pls.'
Mot.  All in all, the Court gave Plaintiffs over six months to present their fees arguments
adequately.  That is plenty of time.

award of attorneys' fees." *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 310 (D.D.C. 2020).

Then, to determine whether the eligible plaintiff is entitled to an award, the Court balances four factors. *U.S. Dep't of Com.*, 470 F.3d at 369; *see Brayton*, 641 F.3d at 524. It weighs the public benefit of the disclosure, the nature of the plaintiff's interest in the records, whether any commercial benefits were derived from the request, and the reasonableness of the agency's initial withholding. *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008). No single factor is dispositive, and "[t]he sifting of those criteria . . . is a matter of district court discretion." *Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092, 1094 (D.C. Cir. 1992).

Finally, if the Court concludes that a plaintiff is eligible for and entitled to fees, it considers the reasonableness of the fees requested. *See* 5 U.S.C. § 552(a)(4)(E)(i). The Court may consider the number of hours spent on tasks, the requested hourly rates, the market rates in the relevant community, and the attorneys' skill and experience. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

Courts exercising their discretion must keep in mind the purpose behind FOIA: to "encourage the maximum feasible public access to government information" and to "facilitate citizen access to the courts to vindicate their statutory rights." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977). As a result, the "touchstone of a court's discretionary decision" is whether an award is necessary to advance the goals underlying FOIA. *Id.*; *Urb. Air Initiative, Inc.*, 442 F. Supp. 3d at 310.

## IV.  ANALYSIS

Here, the DOJ challenges both Plaintiffs' eligibility for and entitlement to an award. It then argues that, even if Plaintiffs were eligible for and entitled to attorneys' fees, the amount

they request is unreasonable.  The Court rejects the first argument.  Plaintiffs are eligible for and entitled to an award of attorneys' fees.  Nevertheless, the DOJ is correct that Plaintiffs' requested fees are unreasonable.  The Court reduces the award accordingly.

## A. Eligibility for Fees

There are two ways a plaintiff can show it has "substantially prevailed" and is therefore eligible for an award under FOIA.  First, a plaintiff substantially prevails when it secures "a judicial order, or an enforceable written agreement or consent decree."  5 U.S.C. § 552(a)(4)(E)(ii)(I).  Second, a plaintiff substantially prevails when its suit causes a "voluntary or unilateral change in position by the agency."  *Id.* § 552(a)(4)(E)(ii)(II).  Under the second avenue, the plaintiff is rewarded for instigating governmental action.  *Davis v. U.S. Dep't of Just.*, 610 F.3d 750, 752 (D.C. Cir. 2010).  This so-called "catalyst theory," however, applies only for claims after 2007 because that is when Congress codified the theory though the OPEN Government Act (the "2007 Act").  *Id.* at 753.  In the period prior to the 2007 Act's enactment, the Supreme Court had rejected the "catalyst theory" and instead held that a FOIA plaintiff substantially prevailed only if a court granted them relief "either in a judgment on the merits or in a court-ordered consent decree."  *Oil, Chem. & Atomic Workers Int'l Union, AFL–CIO v. Dep't of Energy*, 288 F.3d 452, 456–57 (D.C. Cir. 2002) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).  As parts of this case were litigated prior to the 2007 Act, any claims of eligibility rooted in actions before 2007 must meet the pre-Act *Buckhannon* standard.  *Davis*, 610 F.3d at 753.

Plaintiffs offer multiple arguments for having met the eligibility requirement for an award of fees.  They first point to the Scheduling Order entered on June 7, 2002.  *See* Pls.' Mot. at 6;

5

Scheduling Order at 1.[2]  The D.C. Circuit has held that an order requiring an agency to produce documents by a certain date changes the legal relationship between the parties.  *Jud. Watch, Inc.*, 522 F.3d at 368.  This is because, prior to the order, the agency "[is] not under any judicial direction to produce documents by specific dates," whereas after the order, the agency must do so or be subject to the sanction of contempt.  *Id.* (citing *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006)).  The Scheduling Order, like the orders in *Judicial Watch* and *Davy*, requires the DOJ to produce documents by a certain date.  It reads: "By June 24, 2002, the Department of Justice shall produce to plaintiff the roughly 1,500 pages of responsive FBI documents it represents it has already processed."  Scheduling Order at 1.

Through the Scheduling Order, the Court compelled the DOJ to produce the documents that Plaintiffs requested by a deadline or face consequences from the Court.  This is a fundamental shift from the preexisting relationship between Plaintiffs and the DOJ, in which the DOJ ignored Plaintiffs' requests without punishment.  Consequently, the Scheduling Order changed the legal relationship between the parties and Plaintiffs substantially prevailed in this litigation as a result of its issuance, even under the *Buckhannon* standard.

The DOJ mischaracterizes the record and argues that the order "merely directed Defendant to continue processing the request as it normally would have."  Def.'s Opp'n at 8.  It claims that the Order offered "no directive from the Court for Defendant to produce the documents to Plaintiffs by a certain date," flouting the explicit mention of a deadline that opens the Scheduling Order.  *Id.*  But it cannot claim ignorance—it quotes the Scheduling Order starting with the words directly after the deadline ("shall produce to plaintiff the roughly 1,500

---

[2] Plaintiffs incorrectly date this order as having been entered on May 24, 2002.

pages"). *Id.* at 7. The DOJ's arguments are predicated on a seemingly willful omission of a fundamental fact and are therefore unconvincing.

A second of Plaintiffs' theories also meets the requirement for eligibility. On October 10, 2012, this Court granted in part Plaintiffs' motion for partial summary judgment as to the scope of the original FOIA request. October 2012 Order at 2. The October 2012 Order required the DOJ to process 16,705 pages it had previously withheld at a rate of at least 500 pages per month. *Id.* at 2. Like the order in *Davy*, the October 2012 Order "(1) contains mandatory language . . . ; (2) is entitled an 'ORDER'; and (3) bears the district judge's signature, not those of the parties' counsel." 456 F.3d at 166. It thus indicates that Plaintiffs substantially prevailed on the issue.

The DOJ's response is two-fold: (1) that the order came after the FOIA request's "only" public benefit was manifested and is therefore moot, and (2) it is inequitable for the Court to punish the DOJ for using a processing method this Circuit vindicated in later decisions. Def.'s Opp'n at 10–11. The DOJ misunderstands the purpose of the eligibility test with both of its responses. First, public benefit is not a factor in this prong of the analysis. This Court cannot find another case that looks to public benefit to assess eligibility, and the DOJ does not provide one. Second, the correctness of the DOJ's processing has no effect on the eligibility question either. A court order does not need to "include an admission of liability by the defendant" to signal a court-ordered change in the legal relationship between the plaintiff and the defendant. *Davy*, 456 F.3d at 166. Even if the DOJ's processing practice was later deemed acceptable, this Court, in its October 2012 Order, mandated that the DOJ process for release previously undisclosed documents at a certain pace or else face sanctions. October 2012 Order at 2. That is enough to satisfy the eligibility requirements for an award of attorneys' fees.

The Court therefore finds that Plaintiffs substantially prevailed in this litigation as a result of the issuance of the Scheduling Order and the October 2012 Order.  Consequently, Plaintiffs are eligible for attorneys' fees.  As Plaintiffs substantially prevailed as a result of those orders, it is unnecessary to resolve whether they also substantially prevailed on later disputes over the requested records.  *See* Pls.' Mot. at 7–10.

### B.  Entitlement to Fees

After determining that Plaintiffs are eligible for attorneys' fees, the Court must determine if they are entitled to fees.  A court determines whether a plaintiff is entitled to fees by weighing four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Tax Analysts*, 965 F.2d at 1093.  The second and third factor are closely related and are often considered together—they both assess whether a plaintiff has "sufficient private incentive to seek disclosure" without attorneys' fees. *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) (quoting *Tax Analysts*, 965 F.2d at 1095).  No factor of the test is dispositive, and the weighing of the factors is a matter of district court discretion. *See Tax Analysts*, 965 F.2d at 1094.  Here, the Court concludes that the factors cumulatively weigh in favor of awarding attorneys' fees.

### 1.  Public Benefit

Evaluating the public benefit of a FOIA request "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159.  But "'the effect of the litigation' inquiry . . . ask[s] simply whether the litigation caused the release of requested documents, without which the requester cannot be said to have substantially prevailed." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir.

2016).  The factor is a variation on the earlier question of whether a plaintiff has "substantially

prevailed," *id.*, a burden that Plaintiffs have already met.

The rest of the public benefit analysis "requires an *ex ante* assessment of the potential

public value of the information requested, with little or no regard to whether any documents

supplied prove to advance the public interest." *Id.* at 844.  "To have 'potential public value,' the

request must have at least a modest probability of generating useful new information about a

matter of public concern." *Id.* (quoting *Davy*, 550 F.3d at 1159).  The public benefit factor

weighs in a complainant's favor "where the complainant's victory is likely to add to the fund of

information that citizens may use in making vital political choices." *Fenster v. Brown*, 617 F.2d

740, 744 (D.C. Cir. 1979) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir.

1978)).

Through his FOIA request, Oglesby sought information from the CIA and the FBI to help

write an autobiographical memoir of the 1960s antiwar movement. *See* Pls.' Mot. at 10–11.  As

the President of the leftist protest group Students for a Democratic Society, Oglesby sought

government surveillance and intelligence accounts to shape and support the narrative of his

memoir. *See id.*  The memoir, *Ravens in the Storm: A Personal History of the 1960s Anti-War

Movement,* was published on February 11, 2008. *Id.*  It attempted to shed light on the actions of

a government that, Oglesby thought, lied to and spied on its citizens. *See id.*  Information about

the surveillance tactics of the federal government against student dissidents is a matter of public

concern, especially as surveillance technologies continue to improve.  Contemporary

investigative journalism has revealed cases of the government tracking political activists at the

U.S.-Mexico border and during the George Floyd protests.[3]  A book covering government surveillance of dissidents leveraging 16,000 pages of original documents appears significant enough to "have at least a modest probability of generating useful new information" in the public interest.  *Morley*, 810 F.3d at 844.

The DOJ disputes that Plaintiffs have met the public interest requirement through multiple theories, but none are rooted in D.C. Circuit precedent.  First, it argues that Plaintiffs' assertion of public interest rests entirely on the 2008 publication of Oglesby's memoir.  *See* Def.'s Opp'n at 14.  But the publication itself is enough.  The plaintiff in *Davy* met the public benefit requirement through similar facts, namely the publishing of a book about the government investigation into a conspiracy to assassinate President Kennedy.  *See* 550 F.3d at 1161.  This Court does not find a meaningful distinction between the publishing of Davy's book and Oglesby's: both sought government records to write books about covert government operations related to the Cold War.  That Oglesby is a character in his book is of no consequence—he was a character in that period of history.  Plaintiffs' lack of articulation to this point in their brief is also not disqualifying, considering the direct effect of this circuit's controlling precedent.

The DOJ likens this case to *Cotton v. Heyman*, where the D.C. Circuit found that the release of two Smithsonian museum shop documents did not provide a sufficient public benefit. Def.'s Opp'n at 13; 63 F.3d 1115, 1120 (D.C. Cir. 1995).  But the court in *Cotton* saw a public benefit deficiency in a FOIA request whose "sole purpose" was to "facilitat[e the plaintiff's] employment discrimination suit" and that produced only two nonexempt documents.  63 F.3d at

---

[3] *See, e.g.*, Kristina Davis, *The U.S. Tracked Border Activists, Journalists and Attorneys. Is It Legal?*, L.A. Times (Mar. 10, 2019, 12:05 PM), https://www.latimes.com/local/lanow/la-me-ln-us-tracked-activists-20190310-story.html; Zolan Kanno-Youngs, *U.S. Watched George Floyd Protests in 15 Cities Using Aerial Surveillance*, N.Y. Times (June 19, 2020), https://www.nytimes.com/2020/06/19/us/politics/george-floyd-protests-surveillance.html.

1120.  Unlike the plaintiff in *Cotton*, *see id.*, Oglesby's FOIA request came from someone

writing a scholarly book—someone who (like the plaintiff in *Davy*), at best, is considered a

journalist, or, at worst, is like the "quintessential average person" that FOIA was meant to

empower, *see* 550 F.3d at 1162 (internal quotation marks and citation omitted).  And the FOIA

request in this case produced thousands of pages of responsive documents, not just two.  Other

cases that have denied attorneys' fees for failure to meet the public benefit threshold did so due

to scant information in the released documents or because the produced benefit applied only to

industry insiders.  *See, e.g., McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir.

2014) (three unredacted phrases in thirteen pages of documents not enough of a public benefit);

*Fenster,* 617 F.2d at 744–45 (little public benefit in disclosure of a government manual to help

contractors handle performance audits, because only contractors, and not the general public, are

interested in such documents).  Both the subject matter of Oglesby's inquiry and the publishing

of a widely accessible book distinguish this case from those.

The DOJ next argues that Plaintiffs have shown no public benefit for continuing to press

this litigation past the book's publishing date and should thus not recover on fees after February

11, 2008.  Def.'s Opp'n at 15.  But the Department does not point to any caselaw to support the

creation of this cutoff.  No prior court has distinguished an inflection point in FOIA litigation,

where the information produced ceases to produce a public benefit.  For what little time-sensitive

analysis exists in FOIA attorneys' fees inquiries, they favor Plaintiffs' argument.  The plaintiff in

*Davy*, like Oglesby, published his book prior to the release of certain classified documents by the

government agency.  *Davy*, 550 F.3d at 1161.  He nevertheless prevailed.  The public benefit

analysis has not involved a time-sensitive component, and this Court will not create one now.

Finally, the DOJ points to a September 3, 2002, Memorandum Opinion and Order denying Oglesby's motion for a public-interest-based copying fee waiver.  *See* Def.'s Opp'n at 15; Mem. Op. and Order, ECF No. 22.  "If there was an insufficient public interest in the records at the start of this litigation," the DOJ argues, "it is difficult to ascertain what the public benefit has been in maintaining this litigation."  *See* Def.'s Opp'n at 16.  Again, the DOJ points to something that feels intuitively incorrect about the continued litigation.  It can support its assertion only through a legal bait-and-switch.  The test the Court used to resolve the copying fee waiver issue was much more stringent than the one the Court uses here.  The agency must waive the copying fees for any request that is "in the public interest because it is likely to contribute *significantly* to public understanding of the operations or activities of the Government."  *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1383 (D.C. Cir. 1989) (emphasis added) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  That is unlike the "have at least a modest probability" requirement of the test the Court must apply in the context of attorneys' fees.  *Morley*, 810 F.3d at 844.  Furthermore, the waiver test required, among other factors, that "the subject of the requested records must concern identifiable operations . . . of the federal government, with a connection that is direct and clear, not remote or attenuated."  *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 185 F. Supp. 2d 54, 61 (D.D.C. 2002) (quoting 28 C.F.R. § 16.11(k)(2)(i) (2002)).  As a whole, the fee waiver analysis required a degree of specificity to show public interest that is not at all similar to Plaintiffs' burden here.  The Department's argument is therefore unconvincing.  Due to the memoir's focus on a public audience, the ongoing relevance of government surveillance, and the FOIA request's production of significant information, the public benefit factor favors Plaintiffs.

2.  Commercial Benefit and Nature of Interest

The second and third entitlement factors, considered together, address whether the plaintiff had a "sufficient private incentive" to pursue his FOIA request even without the prospect of obtaining attorneys' fees. *Davy*, 550 F.3d at 1160 (citation omitted). The reason for this test is that, if a plaintiff has a commercial benefit or a personal interest in pursuing litigation, an award of fees is generally inappropriate because there is already enough motivation for the claimant to bring suit without the promise of attorneys' fees. *Fenster*, 617 F.2d at 743. The scholarly interest behind Oglesby's research puts Plaintiffs in the same position as the plaintiff in *Davy* who was found not to have a commercial interest in the litigation. *Davy*, 550 F.3d at 1160. Like in *Davy*, Oglesby's book makes him "much like a journalist who 'gathers information of potential interest to a segment of the public, uses [his] editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.'" *Id.* at 1161 (alteration in original) (quoting *Tax Analysts*, 965 F.2d at 1095). As such, he is among those whom Congress treats favorably under FOIA's fee provision. *Tax Analysts*, 965 F.2d at 1096.

The crux of the DOJ's argument here relies on a finding that the public benefit factor cuts against Plaintiffs. As that is not so, the DOJ can lean only on the paucity of Plaintiffs' briefing on this question. The Court does not find that disqualifying and therefore finds that the second and third factors favor awarding attorneys' fees.

### 3. Reasonableness of the Withholding

In deciding whether a plaintiff is entitled to attorneys' fees, a court considers whether the defendant's withholding "'had a reasonable basis in law' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy*, 550 F.3d at 1162 (quoting *Tax Analysts*, 965 F.2d at 1096 and *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 486 (D.C. Cir. 1980)). "The question is not whether [the plaintiff] has

affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Id*. at 1163. If the government's position in declining to release the records at issue is "correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law," however, "that will be weighed along with other relevant considerations in the entitlement calculus." *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993). The fourth factor is meant to "incentiviz[e] the government to promptly turn over—before litigation is required—any documents that it ought not withhold." *Davy*, 550 F.3d at 1166 (Tatel, J., concurring).

Plaintiffs are effectively silent on this point. Their only briefed argument is the supposed impropriety of the FBI's initial conversation with Oglesby. Pls.' Mot. at 12. That contention is irrelevant to the question of whether the government had a colorable reason for withholding the requested documents. But a review of this case's history explains the facts behind the initial withholding. Oglesby submitted a written request to the CIA and FBI for records concerning himself. Compl. ¶¶ 5, 19. When he did not receive full and prompt disclosure of the documents related to the FOIA request, *id.* ¶ 16, he filed this lawsuit. Though the FBI made partial disclosures, it asked for and received extensions for its document release due to an internal backlog of requests. *See* Order on Mot. Summ. J. at 4, ECF No. 32.

The DOJ argues that it has acted in a fair and expeditious manner. *See* Def.'s Opp'n at 20. That appears true. This Court has said that the DOJ's search efforts represented a "good-faith effort to conduct a search for the requested records." *Webster v. U.S. Dep't of Just.*, No. 02-cv-603, 2020 WL 1536303, at *4 (D.D.C. Mar. 31, 2020) (citation omitted). But its observation amounts to an agreement that the Department has not been "recalcitrant" or

"obdurate." *Davy*, 550 F.3d at 1162 (quoting *LaSalle Extension Univ.*, 627 F.2d at 486 (D.C. Cir. 1980)). That alone does not decide whether the government had a reasonable basis in law for withholding documents. Courts in this district have held that administrative delay and FOIA backlog do not form a reasonable basis in law because FOIA's purpose "would not be served if it were reasonable for agencies to withhold documents for indeterminant periods of time because they have too many FOIA requests and too few FOIA staff members." *Reyes v. U.S. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 167–68 (D.D.C. 2018).

The DOJ argues that because the Court ultimately ruled that its withholdings under certain exemptions were appropriate in its March 2020 decision, that means its basis for withholding documents was reasonable. Def.'s Opp'n at 22; Mem. Op. Granting Def.'s Mot. for Summ. J. But the DOJ was delayed in releasing thousands of documents as part of this litigation and its only excuse for those delays was administrative backlog, not the propriety of their withholdings. That rationale does not constitute a reasonable basis in law. *See ACLU v. Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 277 (D.D.C. 2011) (upholding exemptions claimed by defendant but finding that administrative backlog was not a reasonable basis for withholding records eventually produced).

Given the agency's incomplete response to Oglesby's FOIA request and the fact that the only reason provided for the delay was lack of resources, the Court cannot find that the DOJ has asserted a "colorable basis in law" for withholding documents. At the same time, Plaintiffs have not effectively argued for this factor. Thus, the Court finds that this factor neither weighs in favor or against awarding attorneys' fees.

In sum, the public interest, commercial benefit, and nature of interest factors favor awarding attorneys' fees while the reasonableness of withholding factor is neutral.  The Court therefore finds that, altogether, the factors warrant granting Plaintiffs their attorneys' fees.

### C.  Reasonableness of Fees

Courts have broad discretion in determining an appropriate fee award and may modify the request based on the reasonableness of the desired amount and the facts of the case. *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203 (D.D.C. 2016) (citing *U.S. Dep't of Com.*, 470 F.3d at 369).  FOIA complainants bear the burden for establishing reasonableness. *Covington*, 57 F.3d at 1107–08.

Fee applications should "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents." *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam).  "[S]upporting documentation must be sufficiently detailed . . . to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Barnard v. Dep't of Homeland Sec.*, 656 F. Supp. 2d 91, 97 (D.D.C. 2009) (internal quotation marks omitted) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004)).  A court's determination of an appropriate attorneys' fees award begins by multiplying "the hours reasonably expended in the litigation by a reasonable hourly fee." *Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998).  The product of the two is referred to as a lodestar, which a court can adjust in appropriate circumstances. *Id.*

To support their fee request, Plaintiffs rely on two exhibits.  One attempts to document the time Lesar spent on the case from 2001 through the present. *See* Itemization of Lesar's Time, ECF No. 251-2.  It consists of a chart with three columns: dates, hours worked (to the

16

tenth of an hour), and brief descriptions of work performed.  *Id.*  The other exhibit multiplies the hours Lesar supposedly worked each year by hourly rates to arrive at a figure of $692,925.18. *See* Chart of Fees Incurred, ECF No. 251-3.

Upon review, the Court finds numerous faults with Plaintiffs' supporting documentation. These shortcomings are pervasive and serious enough for the Court to use its discretion to order a reduced award.  First, the Court identifies errors in Plaintiffs' accounting of the hours their attorney worked.  Second, the Court applies the rates in the USAO Matrix in determining its lodestar, rather than the higher rates of the LSI Matrix that Plaintiffs request, because Plaintiffs did not provide the requisite supporting evidence to justify the latter matrix's use.  Finally, the Court adjusts the lodestar downward due to Lesar's poor, non-contemporaneous bookkeeping and lack of supporting proof.

1. The Court Adjusts the Hours Plaintiffs Claim Their Lawyer Worked
Because of Numerous Errors in Their Time Entries

Plaintiffs made a series of errors in their accounting of Lesar's time.  To begin, the Court found after independently adding together Plaintiffs' time entries that Plaintiffs incorrectly totaled the hours they claim Lesar worked.  For twelve of the twenty-one years, Plaintiffs' total-year hour count was either higher or lower than the sum of the year's time entries.  It turns out that, according to the Court's totaling of Plaintiffs' time entries, Lesar worked 8.9 hours more than Plaintiffs' year total figures indicated.  The Court used its corrected accounting of Lesar's time in its lodestar calculation.

Next, Plaintiffs request fees for work performed on their motions that the Court denied. But FOIA plaintiffs cannot recover fees on "nonproductive time or for time expended on issues on which [they] ultimately did not prevail."  *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1499 (D.C. Cir. 1984) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d

1319, 1327 (D.C. Cir. 1982) (en banc)).  Many of the descriptions in the Plaintiffs' time entries

are too vague to connect them to a specific motion or filing.  Of the time entries that offer

sufficient identifying information, however, several relate to Plaintiffs' motions that the Court

denied.  In an early skirmish, for instance, Defendant moved for a stay to complete the

processing of Plaintiffs' FOIA request.  *See* Def.'s Mot. Stay, ECF No. 15.  Plaintiffs responded

with a motion for summary judgment on the stay question and for "prompt disclosure" of the

requested records.  *See* Pl.'s Mot. Summ. J. Open America Stay and for Prompt Disclosure of

Requested Records, ECF No. 29.  The Court granted Defendant's motion and denied Plaintiffs'

because it determined that Defendant was exercising due diligence in responding to Plaintiffs'

FOIA request.  *See* Order on Mot. Summ. J.  Other failed motions from Plaintiffs consisted of a

motion for a waiver of copying fees (ECF No. 11), a motion for a continuance (ECF No. 20), and

a motion for extension of time (ECF No. 236).[4]

Additionally, some of Plaintiffs' time entries appear to document time spent opposing

Defendant's motions that the Court ultimately granted.  Setting aside Plaintiffs' cross-motions,

the main example of Plaintiffs fruitlessly opposing one of Defendant's motions was their

opposition to the summary judgment motion that finally marked the end of this case.  Defendant

argued that (after several rounds of record searches, productions, negotiations, and briefings) it

---

[4] Plaintiffs filed several other motions for summary judgment that the Court denied (ECF Nos. 53, 96, 107, 205).  But the time Plaintiffs spent on those motions was not "unproductive" or futile.  The Court denied one motion because Defendant's disclosures were "not sufficient to permit proper adversary testing."  *See* Mem. Op. and Order at 2, ECF No. 66.  It denied two other motions because the parties had agreed to additional negotiations, *see* Min. Order (Feb. 24, 2010), and because Defendant had decided to reprocess responsive records, *see* Order, ECF No. 127.  And although the Court denied the remaining motion, it agreed with Plaintiffs' main contention that the October 2012 Order meant that the parties' dispositive motions had to account for over 16,000 pages of records that the Court "deemed to be responsive to Plaintiffs' request."  Order at 4, ECF No. 219.  The Court thus does not deduct time spent on these motions.

had conducted an adequate search for responsive records and disclosed what FOIA required.  *See*

*generally* Mem. P. & A. Supp. Def.'s Mot. Summ. J., ECF No. 234.  Plaintiffs opposed the

motion largely by attacking the adequacy of Defendant's search, *see generally* Pls.' Opp'n Def.'s

Mot. Summ. J., ECF No. 243, but the Court sided entirely with Defendant, *see generally*

*Webster*, 2020 WL 1536303.  For work on motions that the Court decided against Plaintiffs, the

Court reduces the number of compensable hours by 121.9 hours.

Furthermore, certain time entries are clearly erroneous.  The DOJ points out at least three

entries in the log that refer to plaintiffs whom Lesar represented in separate lawsuits.  *See* Def.'s

Opp'n at 25–26 (highlighting four likely references to "Lardner" and "McGee," plaintiffs in

other cases); *see also* Itemization of Lesar's Time at 10, 14–16.  The Court has identified other

entries that pertain to cases different from this one too.  *See, e.g.*, Itemization of Lesar's Time at

13–15 (referring to "R. Hall," "John Clark," "McGee," "Jeremy Simon").  Similarly, there are at

least two entries suggesting that Lesar "reviewed" court decisions prior to those decisions'

issuances.  *Compare* Itemization of Lesar's Time at 4 (listing "reviewed decision" on February

22, 2007), *and id.* (listing "reviewed court's 4/16 memorandum" on April 11, 2007), *with* Mem.

Op. & Order (issued February 27, 2007), *and* Mem. Order, ECF No. 71 (issued April 16, 2007).

There are also a couple entries that lack a description of work performed.  *See* Itemization of

Lesar's Time at 7, 15.  To account for these errors, the Court reduces Plaintiffs' total

compensable hours by 11.4 hours.

Finally, the Court considers unnecessary fees on fees.  "While it is settled in this circuit

that hours reasonably devoted to a request for fees are compensable, fees on fees must be

reasonable, and not excessive."  *Elec. Priv. Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C.

2015) (cleaned up).  Because parsing Plaintiffs' timekeeping records proves difficult, the Court

cannot discount all entries that may constitute unjustifiable fees on fees.  But it does discount the clearest example of excess: the entries from 2020 that corresponded with Plaintiffs' requests for extensions to file their motion for attorneys' fees.  Therefore, the Court reduces Plaintiffs' total compensable hours by 5.6 hours.

> 2.  Plaintiffs Did Not Meet Their Burden to Show that the LSI Matrix Rates
> Are Reasonable, So the Court Uses the USAO Matrix

To establish a reasonable hourly fee, a plaintiff must "produce satisfactory evidence—*in addition to* the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (emphasis added) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  Fee matrices provide a useful starting point for that analysis.

A fee matrix is a chart averaging rates for attorneys at different experience levels.  "For decades, courts in this circuit have relied on some version of what is known as the *Laffey* matrix."  *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019).  "Two competing *Laffey* matrices have emerged—the Legal Services Index ('LSI') Matrix and the United States Attorney's Office ('USAO') Matrix—each adjusting for inflation in different ways."  *Urb. Air Initiative, Inc.*, 442 F. Supp. 3d at 322.  "The rates included in the LSI Matrix are the higher of the two."  *Id.*  That is because the LSI Matrix is designed to reflect the hourly rates charged by federal court practitioners who litigate complex cases in Washington, D.C.  *Id.*  Meanwhile, the USAO Matrix is based on data for all types of lawyers from the entire metropolitan area.  *Id.* Plaintiffs ask the Court to use the LSI Matrix, which they claim results in a billing rate of over $1,000 per hour due to their attorney's twenty-plus years of experience.  *See* Pls.' Mot. at 13; *Adjustments to the 1988-1989* Laffey *Matrix Rates Using the Legal Services Index* ("LSI

Matrix"), https://

static1.squarespace.com/static/5a2af8a0f14aa1cbbcf14079/t/5f0df64c7499f454e3f31579/159475

0565865/LSI+Laffey+Matrix+Updated+Using+LSI+%287%2F2020%29.[5]

Though a fee matrix is a useful place to start, pointing to one does not automatically

qualify a plaintiff for its rates.  A plaintiff can justify the LSI Matrix's use by providing evidence

that either (1) their case "fall[s] within the bounds of complex federal litigation," a class of cases

for which the LSI Matrix presumptively applies, or (2) litigators who brought the cases under the

same statute received the same fees.  *12 Percent Logistics, Inc. v. Unified Carrier Registration*

*Plan Bd.*, No. 17-cv-02000, 2020 WL 7248347, at *3–4 (D.D.C. Dec. 9, 2020) (alteration in

original) (internal quotation marks omitted) (quoting *Reed v. District of Columbia*, 843 F.3d 517,

521 (D.C. Cir. 2016)).  Plaintiffs seek to recover attorneys' fees based on the higher LSI Matrix

rates, but they do not offer any evidence to justify it.

First, Plaintiffs do not provide evidence that this case fell within the bounds of complex

federal litigation.  At most, Plaintiffs assert that, "[g]iven Attorney Lesar's four and a half-

decade of experience and a history of having litigated over 200 FOIA cases in district courts and

the District of Columbia Court of Appeals, he qualifies for the highest rate available."  Pls.' Mot.

---

[5] Plaintiffs seem to misread the fee matrix they propose.  For example, for 2016 and 2017, Plaintiffs assert that Lesar's rate should be $1,036.90 per hour.  *See* Chart of Fees Incurred.  But the LSI Matrix's rate for an attorney of Lesar's experience in that same time period is $826 per hour.  LSI Matrix at 4.  Plaintiffs appear to take the Adjustment Factor and turn it—a number with decimals—into a whole dollar figure to determine Lesar's hourly fees (Lesar's requested rate, $1,036.90, is similar to the Adjustment Factor, 1.036943).  *Id.*  That is not how the Adjustment Factor works.  The Adjustment Factor is a figure tied to the Bureau of Labor Statistics' Consumer Price Index ("CPI").  *Id.* at 1 n.3.  It is derived by dividing the legal services industry's unique CPI from the current year by the same figure from the previous year.  LSI Matrix at 1 n.3.  The Adjustment Factor thus tracks the inflation of fees on a year-by-year basis: if one takes the suggested hourly fee from Year 1 and multiples it by the Adjustment Factor from Year 2, one gets the LSI Matrix's suggested hourly fee for Year 2.  In any case, Plaintiffs' error does not matter because the Court ends up using the USAO Matrix anyway.

at 13.[6]  But that is not enough.  Though Lesar's experience is relevant for determining the

appropriate fee under either the LSI or USAO Matrix, it does nothing to inform this Court's

decision on which of the matrices to use.

Second, there is no presumption that FOIA cases qualify as complex federal litigation.

Recent cases in this district have refused to apply the LSI Matrix to FOIA cases where there was

insufficient proof to support its use.  *See 12 Percent Logistics, Inc.*, 2020 WL 7248347, at *5;

*Urb. Air Initiative, Inc.*, 442 F. Supp. 3d at 323; *Barton v. U.S. Geological Surv.*, No. 17-cv-

1188, 2019 WL 4750195, at *7 (D.D.C. Sept. 29, 2019).  Indeed, according to an analysis

submitted as an exhibit in one of those cases, "USAO Matrix rates were awarded to" a "clear

majority" of "eligible and entitled [FOIA] plaintiffs" in this district over the last decade.  *12*

*Percent Logistics, Inc.*, 2020 WL 7248347 at *5.

Nevertheless, Plaintiffs posit that *DL v. District of Columbia* requires this Court to use

the LSI Matrix.  *See* Pls.' Mot. at 13; 924 F.3d at 590.  In that case, plaintiffs in an Individuals

with Disabilities Education Act suit sought attorneys' fees using rates from the LSI Matrix.  *DL*,

924 F.3d at 590.  Although the district court found the USAO Matrix presumptively applicable

for a case like that one, the Court of Appeals disagreed and applied the LSI Matrix's rates.  *Id.* at

591–93.  But *DL* did not mandate the LSI Matrix's use or categorically reject the USAO Matrix.

*Id.*  The main problem the D.C. Circuit found there was that the district court considered the

USAO Matrix to be *presumptively* applicable.  *Id.*  It was wrong to apply the USAO Matrix—

which incorporated the rates of all kinds of attorneys from the entire D.C. metropolitan area—

because the case there involved complex federal litigation in the District.  *Id.* at 592–93.  As a

---

[6] Although Lesar has indeed litigated FOIA cases before this Court for decades, since the
undersigned has presided over this case, Lesar's performance has been inadequate in many
respects.  This Court cannot conclude that he qualifies for the highest rate available.

fellow district court summarized, "*DL* is limited to cases . . . where the fee applicant satisfies its burden of showing that the case involves complex federal litigation."  *12 Percent Logistics, Inc.*, 2020 WL 7248347, at *5.

Plaintiffs have not done that here.  Nor have they shown that the market rate for regional FOIA practitioners comports with the LSI Matrix rates.  The Court will thus apply the USAO Matrix rates, as has become common practice in this district over the last decade.  *See, e.g.*, *12 Percent Logistics, Inc.*, 2020 WL 7248347, at *5–6. (applying USAO Matrix after finding that case was not complex federal litigation); *Urb. Air Initiative, Inc.*, 442 F. Supp. 3d at 323 (applying the USAO Matrix rates when plaintiffs failed to justify use of higher LSI Matrix); *see also Civil Division*, U.S. Att'y's Off., D.C., https://www.justice.gov/usao-dc/civil-division (providing links to the USAO Matrix, by year).

The following chart summarizes the Court's hours adjustments discussed above—first correcting Plaintiffs' addition mistakes, then deducting hours for motions lost, clear recordkeeping errors, and unnecessary fees on fees—before applying the USAO Matrix rates. The result of the Court's adjustments and calculations is a lodestar figure of $376,190.50.

| Time Period (June 1 of one year to May 31 of the next) | Plaintiffs' Hours | Court's Corrected Hours | Court's Hours, Post-Deductions | USAO Matrix Hourly Rate[7] | Fees Earned |
|---|---|---|---|---|---|
| 2001–2002 | 16.3 | 16.3 | 5.0 | $665.00 | $3,325.00 |
| 2002–2003 | 43.6 | 89.7 | 9.1 | $665.00 | $6,051.50 |
| 2003–2004 | 9.3 | 4.7 | 4.7 | $665.00 | $3,125.50 |
| 2004–2005 | 10.1 | 9.1 | 9.1 | $665.00 | $6,051.50 |
| 2005–2006 | 80.8 | 61.1 | 61.1 | $665.00 | $40,631.50 |
| 2006–2007 | 11.8 | 11.8 | 10.5 | $665.00 | $6,982.50 |
| 2007–2008 | 2.8 | 2.8 | 2.8 | $665.00 | $1,862.00 |
| 2008–2009 | 14.5 | 13.0 | 13.0 | $665.00 | $8,645.00 |
| 2009–2010 | 78.3 | 77.5 | 77.5 | $665.00 | $51,537.50 |
| 2010–2011 | 72.7 | 70.0 | 69.8 | $665.00 | $46,417.00 |
| 2011–2012 | 82.3 | 70.4 | 69.7 | $665.00 | $52,136.00 |
| 2012–2013 | 60.7 | 65.5 | 65.5 | $665.00 | $43,557.50 |
| 2013–2014 | 2.7 | 2.7 | 2.7 | $665.00 | $1,795.50 |
| 2014–2015 | 0 | 0 | 0 | $665.00 | -- |
| 2015–2016 | 67.3 | 67.2 | 62.5 | $665.00 | $41,562.50 |
| 2016–2017 | 2.0 | 2.0 | 2.0 | $665.00 | $1,330.00 |
| 2017–2018 | 29.2 | 29.2 | 29.2 | $665.00 | $19,418.00 |
| 2018–2019 | 49.7 | 49.7 | 23.3 | $665.00 | $15,494.50 |
| 2019–2020 | 36.6 | 36.2 | 22.4 | $665.00 | $14,896.00 |
| 2020–2021 | 25.3 | 25.3 | 25.1 | $665.00 | $16,691.50 |
| 2021–present | 0 | 0.7 | 0.7 | $665.00 | $465.50 |
| **TOTAL** | **696.0** | **704.9** | **565.70** | **--** | **$376,190.50** |

3. The Court Discounts Plaintiffs' Fee Award by 40% Due to Poor and Non-Contemporaneous Bookkeeping and Lack of Supporting Proof

Seeing as any examination of Lesar's hours log reveals more errors, the Court cannot be

certain that it accurately captures the time Plaintiffs' counsel spent on the case.  The vagueness

cuts both ways—the Court cannot corroborate what Lesar worked on and give the Plaintiffs

---

[7] In cases of this duration, awarding attorney's fees based on the hourly rate for the year in which the attorney performed the work undercompensates the attorney because of inflation and the time value of money.  To offset the effects of those forces, courts award successful plaintiffs either interest or the current year's hourly rate.  The Court will compensate Plaintiffs for the late-coming payment using the latter approach. *See, e.g.*, *West v. Potter*, No. 05-cv-1339, 2009 WL 10659210, at *4 (D.D.C. Oct. 13, 2009) (collecting cases where courts used market rates at the time of the decision to compensate for delays in payments of attorneys' fees).

credit for it, but neither can it connect hours to motions where Plaintiffs did not prevail and discount them accordingly.

Lesar's hours log simply does not describe his tasks with enough detail to assess the reasonableness of the hours spent. Its descriptions are brief and provide only high-level explanations of his work. *See generally* Itemization of Lesar's Time. Here is a sampling of descriptions from the log: "reviewed file," *id.* at 3; "report," *id.* at 4; "3 emails," *id.* at 6; "Reply, etc.," *id.* at 8; "email AUSA," *id.* at 10; "Review material; removal/fee waiver denial," *id.* at 12; "Vaughn Sample Index," *id.* at 14; "Confirm & Prep for Meeting," *id.* at 15; and "Opinion," *id.* at 16. Furthermore, numerous entries appear to be teleconferences, but the log never describes those conferences' purposes. *See Role Models Am.*, 353 F.3d at 971 ("Similarly inadequate are the numerous entries in which attorneys billed simply . . . for time spent in teleconferences or meetings—over one hundred in total—the purposes of which are not provided."). Lesar's barebones descriptions do not give the Court enough information to evaluate whether the reported hours are reasonable. And given Lesar's noted errors in logging time spent on other plaintiffs' cases, the Court has no confidence that all of these vaguely described entries even pertain to this case.

When faced with inadequate timekeeping records, courts in this district have used their wide discretion to discount lump amounts from attorneys' fee awards. *See, e.g.*, *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226, 230–31 (D.D.C. 2011) (reducing plaintiffs' award by 37.5% for failing to maintain sufficiently detailed contemporaneous records); *Boehner v. McDermott*, 541 F. Supp. 2d 310, 324–26 (D.D.C. 2008) (reducing plaintiff's award by 25% to account for insufficiently documented fees on fees). Neither of the two cited cases had timekeeping deficiencies as pervasive as this one, nor did the

plaintiffs claim that as many hours required compensation.  Moreover, due to the number of errors, lack of corroboration, and size of the requested award, the Court had to embark on the sort of nitpicking expedition that this Circuit discourages.  *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337–38 (Tamm, J., concurring).  Because of those same weaknesses in timekeeping, however, the Court did not come out of its expedition with a satisfactory level of precision.

In a comparable case involving work on unsuccessful motions, non-contemporaneous timekeeping, and undetailed records, the district court reduced the plaintiff's award by 40%.  *Nat'l Sec. Couns. v. CIA*, 189 F. Supp. 3d 73, 82–83 (D.D.C. 2016).  The Court believes that figure is appropriate here too.  It thus uses its discretion to reduce the lodestar award amount by 40%.  Plaintiffs are entitled to $225,714.30 in fees.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for attorneys' fees (ECF Nos. 249, 257) and **DENIES** Plaintiffs' requests to submit supplementary briefing (ECF Nos. 259, 264).  Defendant must pay Plaintiffs $225,714.30 in attorneys' fees.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 17, 2021                                    RUDOLPH CONTRERAS
                                                             United States District Judge